UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSAN ROMERO,

          Plaintiff,

    v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  13-cv-02471-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**ORDER STAYING COLLECTION ATTEMPTS PENDING RESOLUTION OF WAIVER APPLICATION**

Re: Dkt. Nos. 19, 20

### INTRODUCTION

Plaintiff Susan Romero ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, finding she was overpaid disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 19, 20.  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having carefully reviewed the parties' papers, the administrative record ("AR") in this case, and relevant legal authority, the Court hereby DENIES Plaintiff's Motion and GRANTS Defendant's Cross-Motion for the reasons set forth below.

### BACKGROUND

The record before the Court establishes the following relevant events.  Based on an application dated May 15, 1994, the Social Security Administration (the "Agency" or "SSA") awarded Plaintiff Disability Insurance Benefits.  (AR 15.)  However, she later returned to work and, by May 1998, had used her nine-month trial work period.[1]  (AR 15.)  SSA determined that

---

[1] A disabled claimant may work for nine months without losing benefits; this is known as the "trial work period."  20 C.F.R. § 404.1592.  After the trial work period ends, there is an additional "reentitlement period" during which a claimant may receive benefits for any month that she does not perform substantial gainful activity.  *Id.* § 404.1592a.  Disability status ceases with the first

1    Plaintiff had performed substantial gainful activity and was therefore overpaid from June 1998

2    through July 1999 and for September 1999 through February 2001, in the amount of $11,230.30.

3    (AR 15.)

4         Although the initial decision and Plaintiff's request are not in the record, on April 20,

5    2010, the SSA issued a "Notice . . . About Your Request for Reconsideration Concerning the

6    Overpayment of $11230.30." (AR 20.)  The SSA denied Plaintiff's request, finding that she was

7    not entitled to benefits for the relevant period due to her work and earnings.  (AR 20.)  Plaintiff

8    timely requested a hearing before an ALJ, maintaining that: (1) she had not received the payments

9    alleged; and (2) she notified SSA when she started work.  (AR 22.)

10        On May 16, 2011, Plaintiff appeared before ALJ John Moreen.  (AR 86.)  Plaintiff

11   provided the only testimony at the hearing, stating that she told SSA when she was working and

12   only received a few months' payments subsequently.  (AR 88.)  She testified that she attempted to

13   obtain evidence of any bank statements from the time period in question, but records are no longer

14   available.  (AR 92.)  Plaintiff further testified that she requested records from the SSA to verify

15   she received the payments, but of "the handful of papers" SSA provided, "[t]here is nothing in

16   there that would prove I did or didn't get it."  (AR 93-94.)  Plaintiff also stated that any claim

17   against her would be a significant hardship.  (AR 95.)

18        The ALJ issued his decision on May 27, 2011, finding that SSA overpaid Plaintiff

19   $11,230.30 for June 1998 through July 1999 and for September 1999 through February 2001.

20   (AR 15-17.)  The ALJ found that Plaintiff had multiple changes of residence addresses, but this

21   evidence "failed to support Ms. Romero's allegation that she did not receive benefits" because, as

22   of March 1999, Plaintiff had direct deposit of her Social Security benefits.  (AR 17.)  The ALJ

23   cites to page 1 of Exhibit 5, which is a print out, dated March 17, 2011, that includes bank account

24   information.  (AR 24.)  Plaintiff timely appealed this decision to the Appeals Council.  (AR 11.)

25

26   _____

27   month that a claimant works and performs substantial gainful activity after the trial work period.
     *Id.* § 404.1592a(a)(1).  After disability ceases, benefits are paid for the cessation month and the
     two succeeding months.  *Id.* § 404.1592a(a)(2).

28                                            2

United States District Court
Northern District of California

1        On March 27, 2013, the Appeals Council issued a decision overriding the ALJ's in which

2   it determined that Plaintiff received disability payments between April 1999 through July 1999

3   and September 1999 through May 2000.  (AR 3-10.)  The Appeals Council found that these

4   payments constituted overpayment of benefits in a yet to be determined amount.[2]  (AR 9.)

5        Having exhausted her administrative remedies, Plaintiff commenced this action on May

6   31, 2013 for judicial review pursuant to 42 U.S.C. § 405(g).  Dkt. No. 1.  On December 30, 2013,

7   Plaintiff filed her motion for summary judgment.  Dkt. No. 19.  On January 27, 2014, the

8   Commissioner filed a cross-motion for summary judgment.  Dkt. No. 20.

9                              **STANDARD OF REVIEW**

10       This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

11  U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

12  substantial evidence and if the [ALJ] applied the correct legal standards."  Holohan v. Massanari,

13  246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a

14  scintilla, but less than a preponderance, of evidence that a reasonable person might accept as

15  adequate to support a conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The

16  court must consider the administrative record as a whole, weighing the evidence that both supports

17  and detracts from the ALJ's conclusion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.

18  1989).  However, where the evidence is susceptible to more than one rational interpretation, the

19  court must uphold the ALJ's decision.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

20  Determinations of credibility, resolution of conflicts in medical testimony, and all other

21  ambiguities are to be resolved by the ALJ.  Id.  Additionally, the harmless error rule applies where

22  substantial evidence otherwise supports the ALJ's decision.  Curry v. Sullivan, 925 F.2d 1127,

23  1131 (9th Cir. 1990).

24

25

26  ─────────────────────
27  [2] The parties do not address the amount of overpayment in their motions, but the Commissioner
    states that SSA has yet to determine the specific amounts Plaintiff was allegedly overpaid.  Def.'s
28  Mot. at 2 n.1.

# DISCUSSION

In her Motion, Plaintiff argues that the ALJ applied the incorrect legal standard by placing the burden on her to show that she did not receive an overpayment.  Pl.'s Mot. at 6.  Plaintiff argues that the ALJ "expected Ms. Romero to go out and find 10 year old bank records to prove she did not receive funds, rather than require the SSA to prove Ms. Romero received any payments."  *Id.*  In the alternative, Plaintiff argues that even if the ALJ properly placed the burden on the Commissioner, there was no substantial evidence that she received the payments in question.  *Id.*

In response, the Commissioner agrees that the Agency has the burden of proof.  Def.'s Mot. at 2.  However, she argues that substantial evidence supports SSA's finding of overpayment, noting that the Agency's records contain Plaintiff's name, social security number, and address, as well as bank account information showing Plaintiff as payee and direct deposit of payments as of March 1, 1999.  *Id.* at 3.  The Commissioner further argues that Plaintiff's admissions are further evidence that she received payments during this period.  *Id.*  Specifically, the Commissioner notes that in 2009, after the Agency initiated wage garnishment proceedings, Plaintiff contacted the Agency and requested a reduction in the monthly payment amount, which constitutes a tacit admission that the Agency overpaid her.  *Id.*

## A.    Legal Standard

"The Social Security Act includes the following statutory scheme for adjustment or recovery of benefits as a result of an overpayment:

> With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds . . . , or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A).  It also provides that "there shall be no adjustment of payments to, or

United States District Court
Northern District of California

4

1    recovery by the United States from, any person who is without fault if such adjustment or recovery

2    would defeat the purpose of this subchapter or would be against equity and good conscience." *Id.*

3    § 404(b).

4         The Commissioner bears the burden of proving the fact of overpayment by substantial

5    evidence. *McCarthy v. Apfel*, 221 F.3d 1119, 1124-25 (9th Cir. 2000).  Thus, "[t]o recover

6    overpayments, the Commissioner must show that the claimant actually received benefits beyond

7    the period of disability or in excess of the correct amount." *Id.* at 1124 (citing 42 U.S.C. §

8    404(a)).  The Commissioner must establish: (1) that [the claimant] received Title II disability

9    benefits [for the designated period]; (2) that these benefits were in excess of the amount to which

10   [the claimant] was entitled; and (3) that the overpayment was in the amount [alleged]." *Id.* at

11   1124-25.

12   **B.    Application to the Case at Bar**

13        1.    <u>The Commissioner has established that Plaintiff received excess benefit payments.</u>

14        Here, the Court finds that the Commissioner has established that Plaintiff received benefits

15   in excess of the amount to which she was entitled.  "Payments of Title II benefits are generally

16   proved by the Commissioner through computerized SSA payment records and canceled checks

17   from the Treasury Department." *Id.* at 1125.  In the present case, Exhibit 18 documents the

18   history of payments the Agency made to Plaintiff in 1999 and 2000.  (AR 76.)  Near the bottom of

19   the page, a notation explains that Plaintiff received benefits in the amount of $468.00 per month

20   through June 2000, for a total of $3,081.00 in 2000.  (AR 76.)  It also details payments to Plaintiff

21   in 1999, totaling $29,849.80.  (AR 76.)  This exhibit contains Plaintiff's name, social security

22   number and address, as well as bank account information, showing Plaintiff as payee and direct

23   deposit of payments as of March 1, 1999.  (AR 76.)  The Court finds that this SSA record

24   constitutes substantial evidence that the Agency delivered payments to Plaintiff in 1999 and 2000.

25   *McCarthy*, 221 F.3d at 1125.

26        Plaintiff argues that the SSA has failed to meet its burden because it "only relied upon its

27   own recently created records."  Pl.'s Mot. at 7.  She cites to *McCarthy* for the proposition that the

28                                                5

United States District Court
Northern District of California

Agency must also produce cancelled checks or subpoenaed bank records. *Id.* at 6.  In *McCarthy*, the court noted that benefit payments are generally proved through computerized SSA payment records and canceled checks. *McCarthy*, 221 F.3d at 1125.  The record in that case was devoid of any documentation showing that payments were actually made to McCarthy, so the district court considered other evidence, including that McCarthy (1) admitted to the ALJ that he received payments, and (2) tacitly admitted that he was paid benefits by making partial reimbursement of the overpaid amounts and by filling out a request for a waiver of recovery. *Id.*  As to the amount of overpayments, the only document before the court was a letter from SSA to McCarthy stating that overpayments occurred, with a chart showing overpayments. *Id.* at 1126.  The court held that McCarthy's admission and request for waiver of recovery constituted substantial evidence of overpayment. *Id.*  However, it determined that the letter alone did not constitute substantial evidence of the amount of overpayments, and it remanded the case for the Commissioner to establish by substantial evidence the amount of the overpayments. *Id.* at 1126-27.

Here, there is no admission from Plaintiff that she received the overpayments.  However, it is uncontested that in 2002, after the Agency initiated efforts to collect the overpayment, Plaintiff applied for waiver of recovery.  (AR 16, 32.)  Further, the Agency has produced a payment record with Plaintiff's name, social security number and address, as well as bank account information, showing Plaintiff as payee and direct deposit of payments as of March 1, 1999.  (AR 76.)  The Court finds that this constitutes substantial evidence. *McCarthy*, 221 F.3d at 1125.

Plaintiffs also argues that the Commissioner failed to meet her burden because *McCarthy* requires her to establish overpayment by providing both computerized SSA payment records *and* canceled checks.  Reply at 3.  However, the court in *McCarthy* did not specify any combination of evidence that the Commissioner must provide; instead, it offered examples of acceptable evidence, including records and canceled checks. *McCarthy*, 221 F.3d at 1126 ("We do not endeavor to offer an exhaustive list of the types of evidence by which the Commissioner could satisfy his burden.")  The Court also notes that Plaintiff herself attempted and failed to retrieve her own bank records, stating that they are "no longer available."  Pl.'s Mot. at 3.  Plaintiff acknowledged that an

United States District Court
Northern District of California

6

1   Agency subpoena would not lead to any different result.  *Id.* at 7.  Thus, in the absence of other

2   evidence, it is unclear how the Agency could establish overpayment other than with its own

3   records and Plaintiff's request for waiver.[3]

4          2.     <u>The Court is without jurisdiction to determine whether Plaintiff is without fault.</u>

5          Plaintiff also argues that the SSA cannot seek funds back from her, maintaining that she is

6   without fault because she did not believe that she received funds and she told the SSA when she

7   started working.  Pl.'s Mot. at 7.  She further argues that repayment would be a substantial

8   hardship.  *Id.*  In response, the Commissioner argues that Plaintiff had not submitted a waiver

9   application at the time the ALJ and Appeals Council decisions were issued, and this issue is

10  therefore not properly before the Court.

11         When an overpayment has occurred, the SSA is precluded from recovering it "from any

12  person who is without fault," if recovery "would defeat the purpose of [Title II the Social Security

13  Act] or would be against equity and good conscience."  42 U.S.C. § 404(b); *see also* 20 C.F.R. §

14  404.506(a).  In determining fault, the SSA must consider all of the "pertinent circumstances"

15  surrounding the overpayment.  20 C.F.R. § 404.507.  Any party may request a hearing before an

16  ALJ if the Agency has made "[a]n initial determination denying waiver of adjustment or recovery

17

18  _____

19  [3] Plaintiff also alleges due process violations, arguing that the ALJ did not provide her with access
to the SSA records at issue and did not present any evidence to provide a foundation for the
20  documents.  Pl.'s Mot. at 8.  Plaintiff further argues that the records "are indecipherable to most
persons outside the SSA," and that "any sensible contemplation of the Exhibits in the record will
21  require evidentiary statements from counsel for the SSA. Any such explanation would be outside
the record and inadmissible." *Id.*  However, the record indicates that the Office of Hearing and
22  Appeals sent Plaintiff a letter informing her that her file was ready for review and providing
instructions for Plaintiff to examine the file.  (AR 33.)  On April 8, 2011, the Office of Disability
23  Adjudication and Review sent Plaintiff a Notice of Hearing, in which the Agency reiterated
Plaintiff's right to review her file and provided instructions for doing so.  (AR 36.)  At the hearing,
24  Plaintiff testified that she went to the Social Security office in San Francisco and examined her
file.  (AR 94.)  Further, Plaintiff presents no authority requiring the Commissioner to ensure that
25  Plaintiff and her counsel understand the records in her file.  Finally, the Commissioner need not
establish a foundation for the records a Social Security proceedings are non-adversarial and the
26  normal rules of evidence and civil procedure do not apply. *Richardson v. Perales*, 402 U.S. 389,
403 (1971) ("[The Social Security Administration] operates essentially, and is intended so to do,
27  as an adjudicator and not as an advocate or adversary."); *see also McCarthy*, 221 F.3d at 1125, n.
8 (observing that the ALJ "was not bound by the rules of evidence applicable to court
28  proceedings").

United States District Court
Northern District of California

of an overpayment based on a review of the written evidence of record . . . , and the determination was made concurrent with, or subsequent to, our reconsideration determination regarding the underlying overpayment but before an administrative law judge holds a hearing." 20 C.F.R. § 404.930(a)(7). "The overpaid individual bears the burden of proving that he was without fault." *McCarthy*, 221 F.3d at 1126.

Here, the record indicates that in 2002, after the Agency initiated efforts to collect the overpayment, Plaintiff applied for waiver of recovery. (AR 16, 32.) However, in his decision, the ALJ noted that the Agency had not ruled on Plaintiff's application. (AR 16.) The ALJ instructed Plaintiff that if she "believes that the overpayment was not her fault, and if she believes that she cannot afford to repay the overpayment back or that repayment would be unfair for some other reason, she should contact her Social Security office." (AR 17.) It is not clear why, as of 2014, the Agency has yet to rule upon a waiver application submitted in 2002. However, since an initial determination has not been made, the Court agrees that neither the ALJ nor the Appeals Council has the authority to make an initial determination. *See* 20 C.F.R. § 404.930(a)(7). Accordingly, this issue is not properly before the Court at this time. As noted by the ALJ, waiver of recovery or collection may be requested at any time, and the Court encourages Plaintiff to pursue such a claim.

## CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence supported the Commissioner's findings that Plaintiff was overpaid disability benefits.[4] Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

It appears undisputed that Plaintiff applied for waiver of recovery in 2002, but the Agency has yet to issue a determination as to Plaintiff's eligibility for a waiver. Def.'s Mot. at 3. As the Agency has yet to determine whether Plaintiff is eligible for a waiver, she has been unable to

---

[4] Because Plaintiff does not contest the amount of the overpayment, and the Commissioner notes that the Agency has yet to determine the specific amounts Plaintiff was overpaid, the Court does not address this issue.

United States District Court
Northern District of California

exhaust her administrative remedies and the issue is not properly before the Court.[5]   However, it is the Court's understanding that if an overpaid individual requests waiver, recovery stops until an initial waiver determination is made.  *Manitsas v. Astrue*, 2012 WL 2503267, at *2 (N.D. Cal. June 28, 2012) (citing 20 C.F.R. § 404.506(b)).  As such, if Plaintiff's waiver was timely, it is unclear how the Agency can demand repayment before determining whether Plaintiff is eligible for a waiver.  Accordingly, IT IS HEREBY ORDERED that any attempt by the Agency to collect on the overpayment is STAYED pending resolution of any application for waiver that was timely submitted by Plaintiff.[6]

      **IT IS SO ORDERED.**


Dated: February 12, 2014

                                      _____
                                        MARIA-ELENA JAMES
                                        United States Magistrate Judge

United States District Court
Northern District of California

---

[5] The SSA's regulations make it clear that whether overpayment exists and whether overpayment must be repaid are two separate initial determinations.  *Compare* 20 C.F.R. § 404.902(j) with 20 C.F.R. § 404.902(k).  As such, each initial determination requires independent review and full exhaustion of administrative remedies prior to seeking judicial review.  42 U.S.C. § 405(g); see also 20 C.F.R. § 404.900.

[6] Because the issue of fault is not properly before it, the Court's stay should not be construed as a remand under 42 U.S.C. § 405(g).